## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

WASCO LLC,                                      )
    53 State Street                          )  Civil Case No. _____
    14th Floor                               )
    Boston, MA 02109                         )
                                             )
Plaintiff,                                      )
                                             )  COMPLAINT FOR
    v.                                       )  INJUNCTIVE AND DECLARATORY
                                             )  RELIEF UNDER
ANDREW R. WHEELER,                              )  42 U.S.C. § 6972 (a)(2) and
ADMINISTRATOR of the U.S.                       )  28 U.S.C. § 2201
Environmental Protection Agency,                )
_in his official capacity_,                     )
    1200 Pennsylvania Ave., NW               )
    Washington, DC 20460                     )
                                             )
Defendant.                                      )
_____)

### COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff WASCO LLC ("WASCO"), through its undersigned counsel, for its complaint against Defendant, Andrew R. Wheeler ("Defendant" or "Wheeler"), in his official capacity as Administrator of the U.S. Environmental Protection Agency ("EPA"), hereby alleges as follows:

### NATURE OF THE ACTION

1.    This is a civil action for injunctive and declaratory relief, under the citizen suit provision of the Solid Waste Disposal Act, amended as the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, _et seq_. ("RCRA"), specifically section 7002(a)(2) of RCRA, 42 U.S.C. § 6972(a)(2), and the federal Declaratory Judgment Act, 28 U.S.C. § 2201.

2.    The claim under section 7002(a)(2), 42 U.S.C. § 6972(a)(2), is brought against Defendant, acting in his official capacity as Administrator of the EPA, for failure to carry out his non-discretionary duties under RCRA to ensure that North Carolina is administering and enforcing

its EPA-authorized hazardous waste program in accordance with the requirements of RCRA; and to demand that the state correct its illegal, state-issued RCRA permit that improperly names WASCO as a permittee, and withdraw that state-issued permit and replace it with a federal RCRA permit to the sole, proper permittee if the state does not correct the permit.

3.     This matter arises from the wrongful issuance by the North Carolina Department of Environmental Quality ("NCDEQ") of a RCRA Part B post-closure permit ("Permit") to WASCO for the Asheville Dyeing and Finishing Facility, a 65-acre site located at 850 Warren Wilson Road, in Swannanoa, North Carolina, bearing EPA identification number NCD-070-619-663 ("Facility").

4.     From its inception, RCRA has allowed for third parties to provide financial assurance for permittees and has allowed buyers and sellers of facilities regulated under RCRA's interim status regulations to unilaterally inform EPA or an authorized state that a facility has been sold and that the buyer will assume RCRA permitting responsibilities.

5.     While these provisions of RCRA are otherwise applied and enforced uniformly by EPA and authorized states, in this case NCDEQ has forced a third party providing financial assurance to assume the mantle of permittee against its will and has refused to acknowledge that a buyer of an interim status facility has unilaterally released this third party and assumed responsibility for financial assurance and permitting.

6.     Now, to prevent the unfair and unpredictable Balkanization of the nation's hazardous waste program, WASCO seeks to enforce Defendant's nondiscretionary duty to take care to ensure that authorized states uniformly administer, implement and enforce the RCRA program.

7.     Despite his knowledge of NCDEQ's (a) unlawful efforts to impose the burden of assessing, addressing and remediating the Facility on Plaintiff WASCO contrary to the requirements of RCRA, (b) multiple failures to comply with procedural and substantive RCRA requirements, and (c) violation of Defendant's constitutional rights to due process and equal protection, Defendant has chosen to turn a blind eye to the State of North Carolina's abuse of its EPA-authorized state hazardous waste permitting program and its refusal to implement that program in a manner consistent with RCRA, its implementing regulations and long-standing precedent and guidance.

8.     Plaintiff WASCO has been and continues to be harmed by Defendant Wheeler's failure to carry out his non-discretionary duty to oppose, correct, or withdraw the Permit or otherwise issue a proper permit.

## JURISDICTION

9.     This Court has jurisdiction over the claims set forth in this complaint under Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), 28 U.S.C. § 1331, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

10.     On October 2, 2020, Plaintiff gave notice of the violations and its intent to file suit to Defendant, in accordance with RCRA § 7002(a), 42 U.S.C. § 6972(a), and 40 C.F.R. Part 254, ("Notice"). A copy of the Notice was also emailed to Defendant. The Notice was delivered to Defendant Wheeler on October 9, 2020.  A copy of the Notice was also mailed to the Attorney General of the United States.

11.     This matter is an action alleging a failure of Defendant Wheeler to perform an act or duty under RCRA which is not discretionary with the Administrator. The action may now proceed because at least sixty days have passed since the Administrator received the Notice. RCRA § 7002(c), 42 U.S.C.  § 6972(c).

## VENUE

12.     Venue is proper in this Court under sections 7002(a) and (c) of RCRA, 42 U.S.C. § 6972(a) and (c), because this action may be brought in the district court for the district in which the alleged violation occurred or in the District Court of the District of Columbia sixty days after notice has been given to the Administrator.

## DEFENDANT

13.     Defendant, acting in his official capacity as Administrator of the EPA, is the "Administrator" within the meaning of section 7002(a)(2) of RCRA, 42 U.S.C. § 6972(a)(2), and an employee of a federal agency within the United States, and therefore subject to the jurisdiction of any federal district court.

## PLAINTIFF

14.     Plaintiff WASCO is a limited liability company, organized under the laws of the state of Delaware, with its principal place of business in Boston, Massachusetts, and is a "person" within the meaning of section 1004(15) of RCRA, 42 U.S.C. § 6903(15). (Plaintiff WASCO had different names before 2006, and "WASCO" is used for ease of refence).

## ADDITIONAL FACTS

### Site History

15.     The Facility is the site of a former textile mill.

16.     In June 1971, M. Lowenstein & Sons ("Lowenstein") developed the property into a textile mill and finishing facility. In March 1976, Lowenstein sold the Facility to Winston Mills, Inc., which operated under the tradename "Asheville Dyeing & Finishing" ("Winston Mills").

17.     Either Lowenstein or Winston Mills installed two underground storage tanks ("USTs") that were used as part of a dry-cleaning operation that supported the primary textile

manufacturing operations at the facility: (a) a 4,000-gallon raw perchloroethylene ("PCE") UST; and (b) a 2,000-gallon waste PCE tank.

18.     On March 23, 1985, Winston Mills removed both USTs.

19.     On May 28, 1985, NCDEQ cancelled the Facility's RCRA site identification number.

20.     Cancellation of the RCRA site identification number indicates NCDEQ's determination, after inspection, that hazardous waste activities were no longer occurring at the site, following cessation of dry-cleaning activities and removal of the waste UST.

21.     Subsequently, PCE contamination was found in groundwater at and/or near the Facility, and NCDEQ and Winston Mills entered an administrative order on consent, *In re* Winston Mills, Inc. (Docket No. 89-249) ("1990 AOC") on August 29, 1990.

22.     The 1990 AOC, which recites RCRA interim status regulations under 40 C.F.R. Part 265, required Winston Mills to reinstate its EPA ID number, file a RCRA Part A permit application, and formally close the location of the former waste PCE tank (the only hazardous waste unit).

23.     On October 12, 1990, Winston Mills re-applied for an EPA ID Number and submitted a RCRA Part A permit application in accordance with the 1990 AOC.

24.     In 1992, NCDEQ approved a RCRA closure and post-closure plan for Winston Mills, pursuant to the interim status standards of 40 C.F.R. Part 265. Under the NCDEQ-approved plan, Winston Mills removed the potentially affected soil from the tank area, lined the pit with geotechnical fabric, filled the pit with clean crushed stone, installed a two-foot thick clay cover, and a two-foot thick final cover.  After the final cover was installed, Winston Mills certified closure

of the former tank. NCDEQ acknowledged receipt of certification of closure of the tank in December 1992, and the post-closure plan became effective.

25.     The RCRA interim status post-closure plan was approved for a thirty-year period. The plan remains in place and in the name of Winston Mills to the present day. Responsibility for carrying out the post-closure plan has never been transferred to any other entity.

26.     The 1990 AOC also required Winston Mills to provide RCRA financial assurance pursuant to RCRA interim status regulations under 40 C.F.R. Part 265. As of July 13, 1991, Winston Mills' parent entity, McGregor Corporation ("McGregor"), provided RCRA financial assurance on behalf of Winston Mills.

27.     In January 1995 Anvil Knitwear, Inc. ("Anvil Knitwear") acquired various assets from Winston Mills, including the Facility and the "Asheville Dyeing & Finishing" tradename.

28.     On January 31, 1995, Anvil Knitwear submitted an amended RCRA Part A permit application, which identified Anvil Knitwear as the current owner of the Facility and continued to identify Winston Mills as the current operator ("1995 Part A").

29.     At some point after January 1995, two air-sparge/vapor extraction systems ("air-sparge") were installed at the Facility. Neither system was required under the 1990 AOC, Winston Mills' post-closure plan, or any other issued order related to the Facility. NCDEQ never required any permit for the systems, which were shut down as of May 31, 2018.

30.     Four months after the Facility transfer to Anvil Knitwear, Culligan International, Inc. ("Culligan International") began providing RCRA financial assurance on behalf of Winston Mills, in place of McGregor.

31.     Culligan International never owned the Facility.

32.     Plaintiff WASCO acquired Culligan International's corporate parent and its worldwide subsidiaries ("Culligan Entities") in June 1998.  When WASCO acquired the Culligan Entities, the 1995 Part A remained in place (identifying Winston Mills as the then-current operator of the Facility) and Culligan International continued to provide RCRA financial assurance as a third party on behalf of Winston Mills.

33.     WASCO divested the Culligan Entities in September 2004.

34.     After divesting the Culligan Entities, and based on a mistaken perception of its contractual obligations related to the sale, Plaintiff WASCO began maintaining the RCRA financial assurance as a third party on behalf of Winston Mills and paying for a consultant to (i) periodically maintain the now-disabled sparger system approximately one-day per month, (ii) periodically sample certain groundwater monitoring wells at the Facility and report the results to NCDEQ, and (iii) conduct certain physical assessments at portions of the Facility that did not involve the treatment, storage or disposal of any hazardous waste.

35.     The third-party financial assurance on behalf of Winston Mills remains in place to this day. Plaintiff WASCO terminated the consultant on June 16, 2018, and since then has not funded any sampling or other physical assessments at the Facility.

36.     In error, Plaintiff WASCO submitted an amended RCRA Part A application in December 2004, in response to pressure from certain NCDEQ staff members after WASCO divested the Culligan Entities.

37.     Subsequently, first in error in 2006 and then under protest in 2008, and also in response to pressure from certain NCDEQ staff members, Plaintiff WASCO submitted two additional RCRA forms incorrectly identifying itself as the Facility operator. The forms were superseded by the forms later submitted by Dyna-Diggr in 2010 and 2012.

**Transfer of Ownership, Operational Control and**
**All RCRA Responsibilities to Dyna-Diggr**

38.     As noted *supra*, Dyna-Diggr became the sole owner of the Facility on December 19, 2007, since which date Dyna-Diggr has owned and exercised exclusive control over the Facility.

39.     At all times since December 19, 2007, the Facility has been and remains solely owned by, and exclusively under the control of, Dyna-Diggr.

40.     Plaintiff WASCO does not own and has never owned the Facility.  WASCO does not have any right of access to the Facility, does not have any legal authority to grant or control access to the Facility, and is not the beneficiary of any easement for the Facility.

41.     WASCO has no legal right to modify the Facility in any way.

42.     Dyna-Diggr has leased the Facility, or portions thereof, to various parties.

43.     WASCO is not a party to any of the leases between Dyna-Diggr and its tenants, and WASCO has no rights under any of said leases to control Dyna-Diggr's tenants at the Facility.

44.     Under 40 C.F.R. § 270.72(a)(4), all interim status duties, except for the duty to provide financial assurance, are transferred effective immediately upon the date of the change in ownership or operational control of a facility.

45.     Under 40 C.F.R. § 270.72(a)(4), a transferee must provide RCRA financial assurance within six (6) months of the change in ownership or operational control.

46.     Under 40 C.F.R. § 270.72(a)(4), after receiving notice of the transferee's securing of satisfactory RCRA financial assurance, the director of an authorized state hazardous waste program is obligated to release the existing financial assurance instrument.

47.     To date, NCDEQ has not released the financial assurance on behalf of Winston Mills.

48.     Dyna-Diggr failed to provide RCRA financial assurance within six (6) months of the change in ownership or operational control of the Facility, as required under 40 C.F.R. § 270.72.  NCDEQ failed to require Dyna-Diggr to comply with the § 270.72 requirements.

49.     Dyna-Diggr's failure to provide RCRA financial assurance and NCDEQ's failure to require Dyna-Diggr to comply with the § 270.72 requirements continue to the present.

50.     After assuming ownership of the Facility in December 2007, Dyna-Diggr and/or its affiliate Blue Ridge Industrial Support Co.  ("Brisco") engaged in various industrial operations at the Facility.  Brisco held a state-regulated wastewater discharge permit for operations it conducted at the Facility.

51.     Dyna-Diggr filed a RCRA Subtitle C Site Identification form on April 27, 2010, identifying itself as the *sole* current owner and operator of the Facility.

52.     NCDEQ's counsel represented that the Dyna-Diggr form referenced in the immediately preceding paragraph is a RCRA "Part A Permit Application," (the "2010 Part A Application").

53.     Since November 22, 2016 at the latest, NCDEQ's electronic document repository, has included a copy of the Dyna-Diggr 2010 Part A Permit Application and identified it as a "Part A Application" and "Part A" for a "Permit."

54.     On January 18, 2012, Dyna-Diggr submitted yet another RCRA Subtitle C Site Identification form that identifies Dyna-Diggr as the sole current owner and operator of the Facility.  NCDEQ entered this information into RCRAInfo, the official government database for RCRA permitting information, and represented this form to be a RCRA "Part A Permit Application" (the "2012 Part A Permit Application").

55.     In August 2010, Plaintiff WASCO sought to withdraw the three RCRA forms that it had signed in error and/or under protest.  NCDEQ refused to allow Plaintiff WASCO to withdraw the erroneously submitted forms.

56.     Anvil Knitwear sold the Facility, on an as-is, where-is, with-all-faults basis to Dyna-Diggr on December 19, 2007.  Under the purchase and sale agreement, Dyna-Diggr released Anvil Knitwear from all liabilities, including all environmental liabilities, associated with the Facility.

57.     The EPA's database of record for RCRA information, "RCRAInfo," identifies Dyna-Diggr as an industrial manufacturer

58.     Terms of the December 2007 sale agreement and its associated release of Anvil Knitwear were withheld from WASCO until November 2014.

59.     WASCO never owned the Facility and never had a single employee at the Facility or anywhere in the state of North Carolina.  WASCO does not have any physical presence in North Carolina and is not seeking ever to have a physical presence there.

60.     In an attempt to pin responsibility for remediation on a party it may perceive as having more resources than the undisputed sole owner and operator, NCDEQ, through its attorneys, took a series of actions in an attempt to compel WASCO to submit an application for a RCRA permit.

61.     Those proceedings resulted in an order from the Buncombe County Superior Court on November 30, 2018, requiring WASCO to submit a RCRA Part B permit application, with which order WASCO complied to the best of its ability, but under protest with a full reservation of rights, on February 26, 2019 ("Application*").

62.     The Application*, which is incorporated by reference into the Notice to Defendant Wheeler, is a public record of NCDEQ and identifies Dyna-Diggr as the sole current owner and operator of the Facility.

63.     On June 5, 2019, NCDEQ entered additional information into RCRAInfo that continues to identify Dyna-Diggr as the sole current owner and operator of the Facility, and that remains the most current RCRAInfo data as of the date of this Complaint.

64.     WASCO has repeatedly notified Defendant of NCDEQ's multiple failures to abide by mandatory substantive and procedural RCRA requirements and has repeatedly sought Defendant's assistance in this matter, to no avail.

65.     NCDEQ issued its Final Permit Decision for the Permit on November 20, 2020, and unless the Permit is challenged, it will become effective on December 20, 2020.

66.     Despite Dyna-Diggr's exclusive ownership and control over the Facility, the Permit designates WASCO as the "operator" of the Facility and assigns primary responsibility for Permit compliance to WASCO.

**RCRA State Authorization**

67.     By statute, a state may seek and receive EPA authorization to administer a RCRA hazardous waste program "in lieu of" the federal RCRA program.

68.     By operation of law, requirements of state hazardous waste programs authorized by EPA are federally enforceable.

69.     Unless otherwise noted, the federal RCRA requirements referenced herein are part of North Carolina's EPA-authorized RCRA program and have been incorporated by reference into the North Carolina hazardous waste management regulations, chapter 13A of title 15a of the North

Carolina Administrative Code.  Therefore, for ease of reference, this action references the federal statutory and regulatory citations only.

70.     States with authorized RCRA programs may impose requirements that are more stringent than the minimum federal requirements (if authorized by state law to do so), but no state may take actions contrary to the minimum federal requirements.

71.     The EPA Administrator "shall withdraw authorization," after a determination that a State is "not administering and enforcing" an EPA-authorized program in accordance with the minimum federal requirements of RCRA if the State fails to take appropriate corrective action after receiving notice thereof from EPA. RCRA § 3006, 42 U.S.C. § 6926.  As such, Defendant, once notified that an authorized state is not abiding by the minimum federal requirements of RCRA, may not turn a blind eye to such actions.

72.     Under 40 C.F.R. § 271.19(f), "EPA shall issue permits, or portions of permits, to facilities in authorized States as necessary to implement the Hazardous and Solid Waste Amendments of 1984."

73.     With respect to the issuance of RCRA Part B permits, and for all other requirements relevant to this action, North Carolina has adopted the federal RCRA regulations without modification, and the State program is neither broader in scope nor more stringent than the minimum federal requirements of RCRA.

74.     Since 2011 N.C. Gen. Stat. § 150B-19.3 has prohibited NCDEQ from adopting rules to implement state or federal environmental laws that are more stringent than the minimum federal requirements thereof, unless NCDEQ follows specific additional rulemaking procedures codified in that statutory provision.

75.     To date, NCDEQ has never followed the additional rulemaking procedures required to adopt rules more stringent than the minimum federal requirements for RCRA.

76.     On December 31, 1984, the state of North Carolina first received EPA authorization for its hazardous waste program, and has from time to time received subsequent authorizations, the latest being effective October 10, 2019.

77.     To receive and maintain EPA authorization, a state: (a) must demonstrate its hazardous waste program meets the requirements of section 3006 of RCRA, 42 U.S.C. § 6926 (included within Subtitle III of the Act), and the requirements of Subpart A of 40 C.F.R. Part 271 (promulgated pursuant to Subtitle III of the Act), and (b) "shall at all times" conduct its hazardous waste program in accordance with the requirements of Subpart A of 40 C.F.R. Part 271. 40 C.F.R. § 271.1(g).

78.     Subpart A of 40 C.F.R. Part 271 includes requirements for RCRA permitting program authorization that "must be administered in conformance with," *inter alia*, the following provisions of 40 C.F.R. Parts 270 and 124:

(a)     section 270.10 (no permit may be issued before a permit application is complete, i.e., free of deficiencies and omissions; *see also* section 124.3 and 124.6);

(b)     section 270.13 (criteria and required contents of a Part A application);

(c)     sections 270.14–270.29 (contents of part B, including § 270.30 requirements);

(d)     section 270.30 (standard permit conditions, including granting access);

(e)     section 270.40 (permit transfer, subject to approval after 90-day prior notice);

(f)     section 124.3(a) (barring processing of a permit "until the applicant has fully complied with the application requirements for that permit"); and

(g)     section 124.6(a), (d), and (e) (requiring complete applications before issuance of

draft permits, and also requiring fact sheets to accompany draft permits).

79.    The provision at 40 C.F.R. § 271.13(c) requires that all RCRA permits issued by

the State "shall require compliance with the standards adopted by the State under § 271.12."  The

standards adopted under 40 C.F.R. § 271.12 require that state permitting requirements for

hazardous waste management facilities "must be equivalent to 40 CFR Parts 264 and 266," which

implement RCRA § 3004.

80.    RCRA § 3005(c) requires a permitting authority (EPA or an authorized state) to

determine a facility is in compliance with the requirements of RCRA §§ 3004 and 3005 before any

permit is issued.  42 U.S.C. § 6925(c); *see also* 63 Fed. Reg. 56710, 56712 (Oct. 22, 1998) (noting

that RCRA permits cannot be issued to facilities that do not meet the required standards "because

section 3005(c) of RCRA requires facilities to be in compliance with applicable requirements at

the time of permit issuance").

81.    40 C.F.R. § 271.8(a) requires a State and EPA to enter into a Memorandum of

Agreement as a condition of State authorization.  The Agreement governs the State's management

of the program and its relationship with EPA, and the EPA Administrator "shall not approve any

Memorandum of Agreement which contains provisions which restrict EPA's statutory oversight

responsibility." *Id*.

82.    The latest such agreement between North Carolina and EPA, entitled

"Memorandum of Agreement Between the State of North Carolina and the United States

Environmental Protection Agency Region 4 for the RCRA Hazardous Waste Program" ("MOA"),

was entered in or about July 2015.

83.     The MOA provides, among other things: (a) that NCDEQ is responsible for the correctness of the data it enters into RCRAInfo, the EPA's database of record for RCRA information, and (b) that EPA "will assess the State's administration and enforcement of the [EPA-authorized] State Program *on a continuing basis* for *equivalence and consistency with* RCRA and applicable Federal requirements, guidance, and policies …."  (Emphasis added).

84.     The Permit seeks to require Plaintiff WASCO to perform corrective action at the Facility, despite the fact that the Application* states WASCO (i) is not treating, storing or disposing of hazardous waste, and (ii) is not seeking a permit for the treatment, storage or disposal of hazardous waste.  42 U.S.C. 6924(u)–(v); 40 C.F.R. §§ 264.90–264.101.

85.     The corrective action requirements of RCRA became law pursuant to the Hazardous and Solid Waste Amendments of 1984, (P.L. 98-616, 98 Stat. 3221).

86.     40 C.F.R. Part 271, subpart A sets forth a suite of EPA authorities to review and address state RCRA permits.  These authorities include objecting to and commenting on state permits.

87.     Notwithstanding the exercise of the suite of authorities referenced in the immediately preceding paragraph, 40 C.F.R. § 271.19(f) requires the EPA "to issue permits, or portions of permits, to facilities in authorized States as necessary to implement the Hazardous and Solid Waste Amendments of 1984."

88.     The EPA regularly provides training courses to state hazardous waste personnel, including an annual training course hosted by EPA Region IV entitled, "RCRA Permit Writers Training Course" ("Course").  A supervisor in NCDEQ's Hazardous Waste Section ("HWS") regularly helped instruct the Course.  In June 2019, EPA conducted, and HWS employees, attended

the Course.  Among other things, the Course provides instruction on the proper entities subject to RCRA permits.

89.     Figure 1, below, is a copy of Slide Number 5 of Session Number 4 from the training materials the EPA utilized in the Course:



Figure 1

90.     Figure 1 states, in pertinent part, "Permitting obligation is on the *current* owner and operator."  (Emphasis in original.)

91.     Plaintiff WASCO is neither the current owner nor the current operator of the Facility.

### Defendant has Failed to Object to North Carolina's Failure to Implement
### the Unambiguous Minimum Federal Requirements of RCRA

#### (1) Impermissible Issuance of RCRA Permit to Entity
#### That is Not the Current Owner or Operator

92.     Since 1990 NCDEQ has asserted the Facility was in RCRA "interim status," i.e., regulated under 40 C.F.R. Part 265 and 40 C.F.R. §§ 270.70–270.73.

93.     40 C.F.R. § 270.72(a)(4) provides that upon submission of a Part A permit application by a new applicant, all compliance obligations under RCRA transfer to the new

permittee "immediately" – with the exception of the requirement for the new permittee to post its own financial assurance.

94.     Under 40 C.F.R. § 270.72(a)(4) and NCDEQ's own public records and guidance, Dyna-Diggr became the sole current owner and operator of the Facility, for purposes of RCRA, on April 27, 2010, at the latest, and would be required to fulfill all the legal and financial obligations required under RCRA.

95.     The RCRA "[p]ermitting obligation is on the *current* owner and operator."

96.     40 C.F.R. § 124.9 requires all RCRA draft permits to be "based on the administrative record," which includes the particular application and "any supporting data furnished by the application."

97.     The administrative record in this matter shows that at all times from at least April 2010 through August 2020, Dyna-Diggr was identified as the sole current owner and operator of the Facility.  This same classification, which had been entered into RCRAInfo by NCDEQ, existed on November 20, 2020, the date on which NCDEQ issued its Final Permit Decision.

98.     Nonetheless, NCDEQ purports to issue the Permit to an entity — i.e. WASCO — that is not the current owner or operator of the Facility.

99.     In an attempt to side-step the plain meaning and effect of 40 C.F.R. § 270.72(a)(4), the Permit requires WASCO and Dyna-Diggr to submit a new Part A Permit application within 15 days of its effective date and requires said application to list WASCO as the "operator" of the Facility.

100.    RCRA does not authorize EPA or an authorized state agency to force any party to involuntarily apply for a RCRA permit when, as is the case with WASCO, such party does not

perform the activities that give rise to a permitting obligation, does not seek to perform such activities, and does not seek to replace the current operator.

101.   Defendant was informed of NCDEQ's plan to issue the Permit to an entity that is not the current owner or operator of the Facility on multiple occasions.

102.   Under 40 C.F.R. Part 271, subpart A and the MOA, Defendant is required to object to the issuance of the Permit because the Permit is inconsistent with the minimum federal requirements of RCRA regarding proper parties for permits. But Defendant has failed to do so.

### (2) Impermissible Issuance of RCRA Permit to Facility Not in Compliance

103.   Section 3005(c)(1) of RCRA, 42 U.S.C. § 6925(c)(1), provides that EPA or an authorized state may issue a RCRA permit "[u]pon a determination … of compliance by a facility" with the minimum federal requirements established by EPA pursuant to Sections 3004 and 3005 of RCRA regarding the subject facility.

104.   Neither NCDEQ nor U.S. EPA has made a "finding … of compliance" regarding the Facility in connection with the Permit.

105.   Moreover, NCDEQ has alleged the Facility does not comply with the minimum federal requirements that EPA has established pursuant to Sections 3004 and 3005 of RCRA, including, but not limited to:

(a)   Allegations of non-compliance with 40 C.F.R. Part 270 and Subpart F of 40 C.F.R. Part 264 (NCDEQ Complaint dated April 18, 2018, filed with the Buncombe County Superior Court, which is included in the Application*); and

(b)   Allegations of non-compliance with RCRA post-closure requirements under 40 C.F.R. Part 265 in reports dated from 2016 to 2017, which are publicly available from NCDEQ's Laserfiche portal and which NCDEQ entered into RCRAInfo (Compliance

Report dated November 6, 2019, included as Cmt. Ex. 11-K to WASCO's Permit Comments, defined below).

106.    WASCO has no authority to make any modifications to the Facility to remedy any of the alleged instances of non-compliance because WASCO (i) is not the current owner or operator of the Facility, (ii) has no physical presence at, right of access to, or control over the Facility, and (iii) is not the entity identified in the NCDEQ-approved the post-closure plan for the Facility under 40 C.F.R. § 265.118, which post-closure plan is included in the administrative record for the Permit (*see also* 40 C.F.R. § 265.117(d)).

107.    To date, NCDEQ has done nothing to require Dyna-Diggr, the current owner and operator of the Facility, to correct the conditions there that violate the minimum federal requirements of RCRA.

108.    RCRA § 3005(b) mandates that each application for a RCRA permit must "contain such information as may be required under regulations promulgated by the Administrator …."

109.    The NCDEQ fact sheet for the Draft Permit states that the Application* contains "Deficiencies," and NCDEQ entered information in RCRAInfo that acknowledges "Omissions in the Application[*]."

110.    Defendant was made aware on multiple occasions of the impropriety of issuing a RCRA permit in light of the referenced deficiencies.

111.    Defendant was informed of NCDEQ's plan to issue the Permit without making the required "finding … of compliance" and without remedying the deficiencies in the Application* on multiple occasions.

112.    Defendant was required to object to the issuance of the Permit pursuant to RCRA § 3005(b)–(c), Subpart A of 40 C.F.R. Part 271 (including section 271.19) and the MOA, because

the Permit is inconsistent with the minimum federal requirements of RCRA that require facilities

to be in compliance with Sections 3004 and 3005 of RCRA.  But, Defendant failed to do so.

### (3)  Impermissible Issuance of RCRA Permit to a Party that Cannot Comply

113.    40 C.F.R. § 270.30 lists a number of mandatory requirements that must be included

in a RCRA Part B Permit, including but not limited to 40 C.F.R. § 270.30(a), which requires a

RCRA permittee to comply "with all conditions" thereof except to the extent the permittee is

relieved of an obligation to do so by way of an emergency permit.  There is no emergency permit

associated with this Facility.

114.    Plaintiff WASCO does not own or control the Facility, nor does WASCO have any

physical presence at, right to control access to, or right to control any activities at the Facility,

including but not limited to the activities of the current and sole Facility owner and operator, Dyna-

Diggr, or any of Dyna-Diggr's tenants.

115.    Plaintiff WASCO cannot grant NCDEQ or EPA access to the Facility, as required

under 40 C.F.R. § 270.30(i).

116.    Plaintiff WASCO cannot operate and maintain the Facility, as required under

§ 270.30(e).

117.    Plaintiff WASCO cannot comply with any of the other conditions that impliedly

require a regular, day-to-day physical presence at the Facility.

118.    States with an EPA-approved RCRA program may not issue a RCRA Permit to an

entity that lacks the ability to comply with the requirements of that permit.

119.    Plaintiff WASCO informed Defendant on multiple occasions of its inability to

comply with the requirements of the Permit, including but not limited to the mandatory permit

conditions codified in 40 C.F.R. § 270.30.

120.    Defendant was required to object to the issuance of the Permit pursuant to RCRA § 3005(c), Subpart A of 40 C.F.R. Part 271 (including section 271.19) and the MOA, because the Permit is inconsistent with the minimum federal requirements of RCRA in that RCRA permits must not be issued to applicants that cannot comply with all permit conditions.

121.    As demonstrated herein, WASCO cannot comply with all Permit conditions.

122.    Insofar as the Permit is issued to an improper party that cannot comply with all Permit conditions, it is insufficient to carry out HSWA's corrective action requirements. Accordingly, Defendant must issue a proper permit to the current owner and operator as necessary to implement HSWA in North Carolina.

### (4) Impermissible Issuance of RCRA Permit in Violation of Minimum Procedural Requirements

123.    RCRA § 3005(b) mandates that each application for a RCRA permit must "contain such information as may be required under regulations promulgated by the Administrator …."

124.    40 C.F.R. § 124.3(a)(2) prohibits NCDEQ from beginning "the processing of a permit until the applicant has fully complied with the application requirements for that permit."

125.    40 C.F.R. § 270.10(b) mandates that the owner of a facility must sign the application for a RCRA permit.

126.    40 C.F.R. § 270.10(d) states that, "All applicants for RCRA permits shall provide information set forth in § 270.13 [i.e., Part A] and applicable sections in §§ 270.14 through 270.29 [i.e., Part B] …."

127.    40 C.F.R. § 124.3(c) states NCDEQ "shall notify the applicant in writing whether the application is complete," and if the application is incomplete, NCDEQ "shall list the information necessary to make the application complete."

128.    40 C.F.R. § 124.3(f) states that the effective date of an application is the date that NCDEQ "notifies the applicant that the application is complete as provided in [§ 124.3(c)]."

129.    40 C.F.R. § 124.6(a) provides that NCDEQ may "tentatively" decide to issue a draft RCRA permit "[o]nce the application is complete."

130.    40 C.F.R. § 124.9 requires draft RCRA permits to be based on the administrative record for the permit, which includes, among other specified records, the application, "any supporting data furnished by the applicant," the fact sheet for the permit and all documents cited in the fact sheet, and other documents in the supporting file for the draft permit.

131.    North Carolina has incorporated these regulations regarding RCRA permit application completeness and deficiencies into its EPA-approved hazardous waste program by reference and without modification.

132.    Dyna-Diggr did not join the submittal and did not sign the Application*.

133.    To date, Dyna-Diggr has not signed the Application*.

134.    The Application* expressly identifies RCRA permit application requirements with which Plaintiff WASCO cannot comply as a result of (i) having no physical presence at, no right of access to, or control over the Facility, (ii) not seeking to perform any of the activities that require a RCRA permit, and (iii) not being the current owner or operator of the Facility.

135.    The Application* remains necessarily incomplete.

136.    NCDEQ has acknowledged, in writing, that the application for a RCRA Part B Permit for the Facility is incomplete (i.e., contains "deficiencies" and "omissions").

137.    NCDEQ's hazardous waste regulations require that, upon receipt of an incomplete RCRA Part B Permit application, it must issue a Notice of Deficiency to the applicants and refuse to process the application until the deficiencies have been corrected or otherwise resolved.

138.    NCDEQ's regular practice is to provide the required Notices of Deficiency to permit applicants using the following standard language, "The attached Notice of Deficiency identifies specific items that must be corrected before the application can be determined to be complete," or substantially similar language.

139.    On March 29, 2020, NCDEQ entered the following statement into EPA's RCRAInfo database:

> "The Application was reviewed and designated NOT complete. Due to ongoing litigation, NC DOJ advised that the Permit should be drafted. Omissions in the Application will be addressed in the Permit."

(Emphasis in original).

140.    NCDEQ knows that RCRA § 3005 and 40 C.F.R. §§ 124.3, 124.6 & 270.10 prohibit it from issuing the RCRA Part B Permit to WASCO because the Application* is necessarily incomplete in that WASCO is unable to fully comply with the application requirements and the required standard conditions.

141.    NC DOJ is aware of the plain language of RCRA § 3005 and 40 C.F.R. §§ 124.3, 124.6 and 270.10.

142.    NC DOJ is also aware of NCDEQ's practice of issuing a Notice of Deficiency for an incomplete RCRA Part B Permit application and not processing said application until the deficiencies and omissions have been resolved.

143.    NCDEQ, with the assistance of NC DOJ, is attempting to issue the Permit in violation of the minimum federal requirements of RCRA.

144.    In an attempt to side-step the plain meaning of RCRA § 3005 and 40 C.F.R. §§ 124.3, 124.6 and 270.10, the Permit requires Dyna-Diggr and WASCO to submit a new RCRA Part B permit application within 60 days after the Permit effective date.

145.    The plain language of 40 C.F.R. §§ 124.3, 124.6 and 270.10 prohibits the state of North Carolina from processing — let alone issuing — a RCRA Part B Permit on the basis of an incomplete application such as the Application*.

146.    The requirement for WASCO and Dyna-Diggr to submit a new Part B Permit application after the effective date of the Permit is fundamentally at odds with the requirements of RCRA § 3005 and 40 C.F.R. §§ 124.3, 124.6 and 270.10.

147.    WASCO made Defendant aware of these matters on multiple occasions.

148.    Defendant was required to object to the NCDEQ's issuance of the Permit or to issue its own correct permit as necessary to implement HSWA. But, Defendant has failed to do so.

### (5)  Additional Impermissible NCDEQ Deficiencies Regarding the Permit

149.    By seeking to force Plaintiff WASCO to submit a new Part A within 15 days of the effective date of the Permit, the Permit violates the 90-day prior notice requirement of 40 C.F.R. § 270.72(a)(4) that govern actually sought-after changes of current operators.

150.    Plaintiff WASCO does not seek ever to replace Dyna-Diggr as the current operator of the Facility.

151.    40 C.F.R. § 270.30 requires NCDEQ to incorporate the conditions applicable to all permits set forth in the regulation "either expressly or by reference."  The Permit includes at least four conditions in which NCDEQ impermissibly changes the language of standard conditions set forth in section 270.30, as well as several additional conditions in which NCDEQ impermissibly changes the language of other regulations that it has adopted without modification from the federal RCRA regulations.

152.    The Permit improperly requires Plaintiff WASCO to continue to maintain the RCRA post-closure financial assurance provided on behalf of former operator Winston Mills, pursuant to the interim status regulations under 40 C.F.R. Part 265.

153.    Plaintiff WASCO currently continues to maintain RCRA post-closure financial assurance on behalf of former operator Winston Mills for three reasons:

(a)    Dyna-Diggr has violated and continues to violate the requirement, set forth in 40 C.F.R. § 270.72, to provide financial assurance and assume all other RCRA responsibilities for the Facility;

(b)    NCDEQ has failed (i) to compel Dyna-Diggr to provide financial assurance and to assume all other RCRA responsibilities for the Facility as required under RCRA, and (ii) thereafter, to release the financial assurance that WASCO has maintained on behalf of Winston Mills.

(c)    Defendant Wheeler has failed to exercise his non-discretionary duty to ensure that NCDEQ operates its state hazardous waste program consistent with the provisions of RCRA and its implementing regulations and imposes financial assurance obligations on Dyna-Diggr.

154.    The Permit would require WASCO and Dyna-Diggr to submit RCRA Biennial Reports, as operator and owner, respectively, even though such RCRA requires are required only for large quantity generators of hazardous waste or TSDFs that are actively treating, storing or disposing of RCRA hazardous wastes on-site or are actively receiving hazardous waste from off-site subject to a RCRA operating permit.

155.    The Application* and WASCO's Permit Comments show that Plaintiff WASCO is not a large quantity generator of hazardous waste at the Facility, has never actively treated, stored, disposed or received any hazardous waste subject to a RCRA operating permit.

156.    WASCO informed Defendant of these additional deficiencies on multiple occasions.

157.    Because the Permit is inconsistent with RCRA, Defendant was required object to or otherwise oppose the issuance of the Permit under RCRA and the MOA.  But Defendant failed to object to, comment on, or correct the Permit under 40 C.F.R. § 271.19(f) despite his knowledge of these inconsistencies.

### (6) Defendant Cannot Ignore the State's Violation of Plaintiff's Constitutional Rights of Due Process and Equal Protection

158.    In every publicly available RCRA permitting decision made by NCDEQ during the past decade, NCDEQ followed its regulatory obligations under 40 C.F.R. Parts 124 and 271 and its longstanding practice to provide permit applicants with a Notice of Deficiency ("NOD") whenever an application lacked data or information sufficient for the state to issue a permit.

159.    The regulation at 40 C.F.R. § 124.3 further provides that permit applicants must be given an opportunity to correct any deficiencies identified in a NOD and that no permit may be issued when an application has an identified deficiency.

160.    In issuing its Final Permit Decision on the proposed Permit to WASCO, NCDEQ acknowledged deficiencies and omissions in the Application*.

161.     Counter to its mandatory legal requirements under RCRA and its longstanding practice, NCDEQ seeks to have these unspecified deficiencies and omissions corrected in submittals that would be required under the Permit upon its becoming effective, subject to enforcement and penalties.

162.   As set forth more fully in Paragraph 139, NCDEQ acknowledged that the Application* was "NOT complete" but proceeded to issue the Permit anyway, at the direction of the North Carolina Department of Justice, in violation of WASCO's right to equal protection.

163.   Further, the Permit, if it becomes effective, would require WASCO to perform expensive investigation and cleanups on a property belonging to another entity, Dyna-Diggr, with which WASCO has no privity.

164.   In essence, the NCDEQ is attempting to force WASCO to provide Dyna-Diggr with an impermissible windfall, in the form of cleaned up property, in violation of WASCO's due process rights.

165.   In addition, NCDEQ has refused to release WASCO's letter of credit posted as third-party financial assurance in the amount of $443,769.88 in violation of WASCO's due process rights.

166.   Defendant Wheeler is aware of the impropriety of the state's Permit but has elected to ignore the State's blatant RCRA violations and violations of WASCO's constitutional rights.

**Plaintiff WASCO's Comments**
**Challenging the NCDEQ Published Permit**

167.   The public comment period for NCDEQ's published draft Permit for the Facility closed on August 29, 2020.

168.   Plaintiff WASCO timely submitted public comments objecting to and identifying deficiencies in the draft Permit and the draft Permit in its entirety (the comments and associated attachments are herein referred to as "WASCO's Permit Comments"), which deficiencies preclude issuance of the Permit to WASCO.

169.   WASCO's Permit Comments were copied to Defendant Wheeler and several other senior EPA officials, and were delivered to all EPA recipients on August 26, 2020.

**WASCO's Communications to EPA Regarding Its
Mandatory Duty to Object to NCDEQ's Conduct**

170.    Beginning in January of 2019, WASCO began actively seeking Defendant's intervention with NCDEQ's attempts to issue a RCRA Part B Permit in violation of the minimum federal requirements of RCRA.

171.    On January 11, 2019, WASCO's counsel wrote to Defendant and senior members of EPA's management to inform them of NCDEQ's actions in violation of the minimum federal requirements of RCRA (the "January 2019 Letter"), including but not limited to the fact that WASCO is not the current owner or operator of the Facility.

172.    Defendant Wheeler received his copy of the Application* on February 28, 2019, and other EPA recipients received their copies the next day.

173.    The Application* described WASCO's inability to obtain much of the required information for that submission as well as WASCO's inability to comply with the requirements of a RCRA permit for the Facility, including but not limited to certain mandatory RCRA permit requirements in 40 C.F.R. § 270.30.

174.    On March 1, 2019, WASCO met with senior members of EPA's management to discuss these matters.

175.    On April 4, 2019, WASCO's counsel sent an email to EPA's Director of the Office of Resource Conservation and Recovery, which in relevant part states: "EPA guidance makes clear that an authorized state cannot issue a permit under the facts here."

176.    On April 5, 2019, the EPA sent a letter to WASCO stating, in relevant part: "The EPA continues to have confidence in the State of North Carolina's implementation of its authorized hazardous waste program and finds no involvement is necessary in this matter."

177.    On June 5, 2019, NCDEQ entered a manual update into RCRAInfo that continues to identify Dyna-Diggr as the sole current owner and operator of the Facility.

178.    On August 26, 2020, Defendant – and other senior members of EPA's management – received copies of WASCO's Permit Comments.

179.    To date, Defendant has not acknowledged receipt of WASCO's Permit Comments and has taken no action to object to NCDEQ's violations of the minimum federal requirements of RCRA.

**CLAIM FOR RELIEF**
**RCRA – FAILURE TO UNDERTAKE A NON-DISCRETIONARY DUTY**

180.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 179 of this Complaint as if fully set forth herein.

181.    Pursuant to RCRA section 7002(a)(2), 42 U.S.C. § 6972(a)(2), having given the required notice, any person may commence a civil action against "the Administrator where there is alleged a failure of the Administrator to perform any act or duty under [RCRA] which is not discretionary with the Administrator."

182.    Plaintiff WASCO is a person within the meaning of RCRA.

183.    NCDEQ is required "at all times" to conduct its State program approved by the Administrator in accordance with the requirements of Subpart A of 40 C.F.R. Part 271, which requirements expressly reference "EPA's statutory oversight responsibility."

184.    Under RCRA, the Administrator has a non-discretionary duty to ensure that any authorized state program is administered, managed and enforced in a manner consistent with RCRA.

185.    Among other things, Defendant has a non-discretionary duty to object to or otherwise oppose the issuance of the Permit pursuant to RCRA § 3005, Subpart A of 40 C.F.R. Part 271 (including section 271.19) and the MOA.

186.    Where a permit is inadequate to implement corrective action and other requirements under HSWA, the EPA must issue its own permit as necessary to implement HSWA.

187.    Moreover, Defendant cannot turn a blind eye where, as here, a permit would impose an unconstitutional burden on an entity that neither owns nor operates a facility, that has no privity with the current owner and operator, where carrying out the requirements of the permit would unjustly enrich another at the expense of WASCO.

188.    On October 9, 2020, Plaintiff WASCO notified Defendant, in accordance with 40 C.F.R. Part 254, of his non-discretionary duty to ensure that NCDEQ is carrying out its RCRA responsibilities in a manner consistent with RCRA.

189.    More than sixty days have passed since Defendant received WASCO's notice of his non-discretionary duty to object to or oppose the Permit, or otherwise ensure that the Permit is withdrawn, and Defendant persists in his refusal to discharge said non-discretionary duty.

190.    The Administrator likewise has a non-discretionary duty to ensure that NCDEQ is carrying out its RCRA responsibilities in a manner consistent with RCRA and has failed to ensure that:

(a)    NCDEQ require Dyna-Diggr to provide financial assurance governing closure and post-closure care of the Facility and to assume all RCRA responsibilities for the Facility as required under 40 C.F.R. § 270.72(a)(4);

(b)      NCDEQ release the third-party financial assurance Plaintiff WASCO maintains on behalf of Winston Mills as required by § 270.72(a)(4), the continued maintenance of which imposes an illegal burden on Plaintiff WASCO;

(c)      NCDEQ not seek to impose a RCRA permit –

(i)      on an entity that is neither "owning" nor "operating" a Facility as set forth in section 3005(a) of RCRA, 42 U.S.C. § 6925(a);

(ii)      for a facility over which Plaintiff WASCO has no operational control;

(iii)      on the basis of an Application* that contains deficiencies and is necessarily incomplete, due to no fault of Plaintiff WASCO;

(iv)      that incorporates and references the incomplete Application*, which states that Dyna-Diggr is the sole current owner and operator of the Facility and identifies application requirements and standard RCRA permit conditions with which WASCO cannot comply;

(v)      while arbitrarily and capriciously deviating from the RCRA requirement and long-standing state practice that prohibits issuance of RCRA permits on the basis of applications with deficiencies and omissions; and

(vi)      that attempts to cure Application* deficiencies and omissions after issuance of the permit.

191.    Having failed to carry out his non-discretionary duty to ensure that NCDEQ operates its authorized hazardous waste program consistent with the provisions of RCRA, Defendant, under section 7002(a)(2) of RCRA, 42 U.S.C. § 6972(a)(2), must be preliminarily and permanently enjoined to carry out his duties under RCRA.

## CLAIM FOR RELIEF
## DECLARATORY JUDGMENT

192.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 191 of this Complaint as if fully set forth herein.

193.    Under the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), a federal court "may declare the rights and other legal relations of any interested party seeking such declaration."

194.    Plaintiff WASCO has suffered a legal injury because of the acts and omissions of Defendant Wheeler.  Specifically, Plaintiff WASCO has been forced to expend resources carrying out activities at the Facility it was not otherwise obligated to undertake, including the provision of financial assurance, and defending itself from unlawful efforts to hold Plaintiff WASCO financially and otherwise responsible for assessing and remediating hazardous wastes at a facility it does not own or operate.

195.    If Defendant Wheeler's acts and omissions are not remedied, Plaintiff WASCO will continue to suffer financial harm and will itself become subject to RCRA citizen suit and subject to enforcement action under RCRA.

196.    Plaintiff WASCO has exhausted its state administrative and judicial remedies.

197.    Accordingly, Plaintiff WASCO asks this court to issue a declaration in accordance with the Relief Requested section of this Complaint.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment:

1.    Preliminarily and permanently enjoining Defendant Wheeler to exercise his non-discretionary duty:

(a)    to ensure that NCDEQ operates its authorized state RCRA hazardous waste program in a manner consistent with RCRA;

(b)     to ensure that NCDEQ requires Dyna-Diggr, the current owner and operator of the Facility to immediately provide financial assurance, consistent with the requirements of 40 C.F.R. § 270.72(a)(4) and 40 C.F.R. Part 265, subpart H;

(c)     to ensure that NCDEQ thereafter release WASCO of the financial assurance it maintains on behalf of Winston Mills;

(d)     to halt issuance of an unlawful RCRA Part B permit to Plaintiff WASCO, whether by objecting to any such draft permit or directing the EPA to issue its own permit, removing WASCO as named operator, as necessary to implement HSWA;

(e)     if NCDEQ proceeds to issue RCRA Part B permit in final to Plaintiff WASCO, to object to such permit, and force its withdrawal; and/or

(f)     issue a federal RCRA permit, removing WASCO as named operator, as necessary in order to implement HSWA.

2.     Declaring that Defendant has failed to carry out his non-discretionary duty to:

(a)     ensure that NCDEQ is administering its EPA-authorized hazardous waste program in a manner consistent with RCRA;

(b)     either comment on, oppose or withdraw the Permit with respect to Plaintiff, which the Administrative Record demonstrates is an improper permittee; and/or

(c)     in the alternative, issue a new permit only to DynaDiggr, as the sole and exclusive owner and operator of the Facility, as necessary to implement HSWA;

3.     Ordering an award of Plaintiff's reasonable attorneys' fees, expert witness fees, and costs incurred in bringing this action, as authorized by 42 U.S.C § 6972(e); and

4.     Such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 18th day of December 2020.

 /s/ Christopher J. Neumann
Christopher J. Neumann
USDC District of Columbia: CO0044
Greenberg Traurig, LLP
1144 15th Street
Suite 3300
Denver, CO  80202
Tel:  (303) 572-6551
Fax:  (303) 572-6540
Email:  neumannc@gtlaw.com

Bernadette Rappold*
DC Bar ID 480400
Greenberg Traurig, LLP
2101 L Street, N.W.
Suite 1000
Washington, DC 20037
Tel:  (202) 331-3127
Fax:  (202) 331-3101
Email:  rappoldb@gtlaw.com

* Motion for admission to this Court pending.